IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**VERNETA A. COBB,**

    **Plaintiff,**

vs.                                                        **CASE NO. 1:07cv85-MP/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

    Plaintiff, Verneta A. Cobb, applied for supplemental security income benefits. Plaintiff was 45 years old at the time of the administrative hearing, on April 5, 2006, has a 12th grade education, and has past relevant work as a dish washer and a hotel room attendant. Plaintiff alleges disability due to depression and osteoarthropathy. The

Administrative Law Judge found that Plaintiff has the residual functional capacity to do a full range of sedentary work. Applying the "grids," he then found that Plaintiff is a "younger" individual, has more than a high school education or a high school equivalency education, and has no transferrable skills. Applying Rule 201.21 of the "grids,"[1] he found that Plaintiff is not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

      5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal Analysis**

> **Whether the ALJ erred at step 2 by finding that Plaintiff's dysthymic disorder Is not a "severe" impairment**

It is undisputed that the ALJ did not find Plaintiff's dysthymia, or dysthymic disorder,[2] to be a "severe" impairment at step 2. The only "severe" impairment he noted was "status post arthroscopic surgery for a torn medial meniscus." R. 20.

The evidence of depression is the following. On January 15, 2003, Plaintiff was evaluated in the family practice group at Shands at the University of Florida Clinic by

---

[2] Dysthymia (dysthymic disorder), according to the DSM-IV, is a mood disorder characterized by depressed feelings (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness. The diagnosis describes symptoms that have persisted for more than two years but are not severe enough to meet the criteria for major depressive disorder. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Case No. 1:07cv85-MP/WCS

James Bass, M.D.. R. 164-165. Her father had died four days earlier, and her son was to be sentenced that week. R. 164. In addition, Plaintiff had a daughter who suffered from a psychiatric illness. *Id.* She was "tearful" and reported that she did not feel like getting out of bed on many days. *Id.* The assessment was depression. *Id.* A trial of Paxil[3] was prescribed. R. 164-165.

On September 2, 2003, Plaintiff was evaluated by a psychologist, Andres Nazario, Jr., Ph.D. R. 114-117. Dr. Nazario observed her mood to be "somewhat depressed." R. 116. All of his other observations revealed no mood impairment. *Id.* For example, Plaintiff was oriented, her affect was appropriate, she was able to perform the simple memory tests posed by Dr. Nazario, she concentrated adequately, and her persistence and pace were not impaired. *Id.* The diagnosis was Dysthymic Disorder, Late Onset. R. 117. It was thought that she would benefit from counseling to help her deal with those feelings. *Id.* Dr. Nazario concluded that Plaintiff "appears able to concentrate, able to understand and follow directions. She appears able to interact with others appropriately." *Id.*

On September 30, 2004, Plaintiff returned to the Shands Clinic. R. 233. There was no mention of depression. R. 233-234.

On December 17, 2004, she was seen by Christina Medina, M.D. R. 231-232. Depression was noted, and Paxil prescribed. R. 231. There was no notation as to the effects or severity of depression.

---

[3] Paxil is an antidepressant. Physicians' Desk Reference (2004), p. 1583.

Plaintiff returned to the Shands at UF Clinic on January 12, 2005, and again saw Dr. Medina.  R. 228-229.  In the prior two or three weeks, she had "had a lot of acute stressors," so a "new regimen of Paxil" was prescribed.  R. 228.

On March 25, 2005, Plaintiff returned to the Shands Clinic.  R. 226-227.  Depression was noted, but Plaintiff had not taken the prescription of Paxil because she did not have money to buy the medication.  R. 226.  Paxil was resumed, and Plaintiff said she would have money to buy the medication.  *Id.*

At the end of that year, on December 8, 2005, Plaintiff returned to the Shands Clinic.  R. 224-225.  A history of depression was noted.  R. 224.  Dr. Medina said that she wished that Plaintiff could be provided counseling, but "Social Services" did not cover counseling.  R. 224.  The level of Paxil was increased.  *Id.*

At step 2, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630

(11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting* Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so *slight* that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration."  Stratton, 827 F.2d at 1452 n. 9 (emphasis by the court), *quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

     Plaintiff has the burden of proof at step 2.  The ALJ noted the findings in 2003 by Dr. Nazario, which were "essentially normal" findings (that Plaintiff had the ability to concentrate, understand and follow directions, and interact appropriately with others).  R. 19.  He also noted that there was no evidence of any significant worsening of Plaintiff's depression.  *Id*.  The ALJ, therefore, concurred with the state agency psychological consultant (who reviewed only the records), that Plaintiff's depression was not "severe."  *Id*.

     These findings are supported by substantial evidence.  While there is evidence that Plaintiff had a history of some depression treated with Paxil, there is no evidence that Plaintiff's depression has more than a minimal effect upon her ability to work.  Indeed, there is no evidence that her depression has any functional effect upon her

ability to work.  None of the treating physicians noted any functional impairments as a result of depression.  The ALJ did not err in failing to find that Plaintiff's depression was a "severe" impairment at step 2.

### Whether the ALJ erred at step 5 by failing to use a vocational expert

Plaintiff contends that it was error to rely on the "grids" instead of obtaining testimony from a vocational expert.  Plaintiff argues that she has a "severe" impairment, dysthymia, and thus the "grids" were not available.

Dysthymia, or depression, would be a non-exertional impairment.

> Exclusive reliance on the grids is not appropriate either when a claimant is unable to perform a full range of work at a given functional level *or when a claimant has non-exertional impairments that significantly limit basic work skills*. . . .  The grids also may not be used when the claimant's non-exertional impairments are severe enough to preclude a *wide range of employment at the level indicated by the exertional impairments*. . . .  Non-exertional impairments include "postural and manipulative limitations, and must be considered in determining a claimant's residual functional capacity."  20 C.F.R. § 416.945(d).

Walker v. Bowen, 826 F.2d at 1002-1003 (emphasis added); Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).

It was not inappropriate for the ALJ to conclude that Plaintiff's dysthymia was not a "severe" impairment at step 2.  Thus, Plaintiff's depression was not a non-exertional impairment that precluded a wide range of employment at the exertional level determined by the ALJ, sedentary work.  As a consequence, Plaintiff's depression did not preclude use of the "grids."

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record. The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 9, 2007.

        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**